*774 OEINION.
Moeets
: The first contention made by the taxpayer is that it issued $100,000 par value common stock to Wertheimer for the lease which it secured from him, and that such lease had a value of at least $75,000, which amount should be included in its invested capital. It is admitted in the answer that common stock of a par value of $100,000 was issued to Wertheimer for assignment of the lease. Section 326 (a) (2) of the Revenue Act of 1918 provides that the actual cash value of tangible property tona fule paid in for stock shall be included in invested capital. It therefore becomes necessary to determine whether this lease had any such value. On the testimony of the taxpayer’s own witnesses, we are unable to agree that the lease had a value of at least $75,000. Property was *775 assessed in the City of Erie in 1915 at about two-thirds of its value, and it was testified that “ real estate men all over the country have agreed that 6 per cent ” is a fair return on real property. The combined assessed valuations of the Selden and Jarecki properties in 1915 was $132,216. If the assessed valuation was two-thirds of the actual value, then the actual value at that time was $198,324, and 6 per cent of that amount is $11,899.44, which is very close to the combined rental of $12,100 specified in the leases to Wertheimer. The lease to the taxpayer was at the rate of $8,500 a year after the months of April, May, and June, 1915, but Wertheimer reserved part of the property from which an annual rental of $6,920 was being received. Subtracting this amount from $12,100, the total he was obligated to pay under the leases, leaves a rental value of that portion covered by the Strand lease of $5,180, whereas the taxpayer was paying therefor $8,500, and in addition was required to construct a theatre.
Considerable importance is attached by the taxpayer to the rent of $9,000 which was paid on the Perry Theatre as evidencing the fact that its lease had such value. The assessed valuation of the Perry property was $89,400, as against $132,216 of the Strand property. The land covered by the Perry Theatre is 85 feet by 165 feet, while the land in the combined Selden and Jarecki properties is 62 feet 4 inches by 142 feet to 141 feet, but the Perry property contains a building assessed at $35,000. Considering assessed valuations to be two-thirds of actual value, the Perry property was worth in 1915 $134,100, a fair return on which at 6 per cent would be $8,046. It is thus apparent that the Perry rental is not materially disproportionate to the Strand rental, having due regard to the assessed valuations and the exclusions in the Strand lease and that the Perry lease covered a fully improved property.
In the light of all the evidence we are of the opinion that the Strand lease did not have any actual cash value when paid in for stock.
This brings us to the' taxpayer’s next contention, that it sold certain assets for $61,918.68 for which it should account in its tax returns, while the balance of the consideration of $160,000 was a purchase of the stock and should be accounted for by the stockholders. On September 12, 1919, certain stockholders of the taxpayer authorized English “to sell the capital stock of said company, whether common or preferred, which we own, on the basis of the offer to purchase said stock for $160,000.” This offer to purchase did not go through. Further negotiations resulted in the contract of February 7, 1920, the provisions of which are determinative of the taxpayer’s *776 contention. That contract provides that the taxpayer, for the consideration of $160,000, assigns to the vendee, James B. Clark, “the existing lease to the Strand Amusement Co. for the premises at 918 State Street, in the City of Erie, Erie County, Pa., together with the good will, theatre building, equipment, and all other property now belonging to the Strand Amusement Co. in the City of Erie,” with certain exceptions not pertinent. The taxpayer emphasizes that provision of the contract which provides:
It is understood that the sum of Sixty-one Thousand Nine Hundred Eighteen and Sixty-eight Hundredths ($61,918.68) Dollars, being the boot value of the theatre building and equipment shall be the consideration for the assignment of said lease of said theatre building and equipment, and the residue of the consideration, to-wit, Ninety-eight Thousand Eighty-one and Thirty-two Hundredths ($98,081.32) Dollars shall be the consideration for the good will and established trade of the Strand Theatre owned and operated by the Strand Amusement Company, and as represented by the capital stock of the Strand Amusement 'Company purchased by James B. Clark and assigned by him to the Strand Amusement Company for retirement in the liquidation of said company; that said sum of Ninety-eight Thousand Eighty-one and Thirty-two Hundredths ($98,081.32) Dollars shall be paid to the Vendor as agent for its stockholders and distributed among said stockholders from the proceeds of said notes.
The “ good will ” and “ established trade,” to which the $98,081.32 was allocated, were “ owned and operated by the Strand Amusement Co.,” and the consideration therefor belonged to the taxpayer just as much as that allocated to the theatre building and equipment. A corporation is not an agent for the distribution to its stockholders of all or any portion of the consideration for the sale of its own assets. There is no question in our minds that the contract was a sale of the taxpayer’s assets for a consideration of $160,000, irrespective of any provisions prescribing a convenient means of liquidation and distribution of the corporate assets to its stockholders.
The taxpayer contends that the cost of the theatre should be amortized over a period of 20 years. The lease with Wertheimer was for 10 years, and provided for an option to renew for an additional 10-year period if he exercised the option to renew contained in his leases with the owners of the property. As the taxpayer’s right to renew was conditioned upon the action of Wertheimer, we are of the opinion that the renewal privilege was too indefinite to warrant the taxpayer’s amortizing the cost of the theatre over a 20-year period, and we therefore approve the determination of the Commissioner in spreading the cost over the original term of the lease. As the theatre was not commenced until about August 1, 1915, amortization of the cost thereof should not start until that date.